**In the Matter of John O. NIX and wife, Toni T. Nix, Etc., Et al., Debtors.**

**STATE FIRST NATIONAL BANK, Appellant,**

v.

**John Olin NIX and Toni Thompson Nix, Appellees.**

**Billy Lee THOMPSON, Trustee, Appellee,**

v.

**STATE FIRST NATIONAL BANK, Appellant.**

**No. 88–2686**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1989.

Rehearing Denied March 24, 1989.

Nelson V. Shaw, Smith, Stroud, McClerkin, Dunn & Nutter, Texarkana, Tex., for appellant.

Billy Lee Thompson, Trustee, Lufkin, Tex., pro se.

Stephen T. Arnold, Texarkana, Ark., for John Olin Nix & wife, Toni Thompson Nix

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

■ The issue is whether a Keogh retirement plan, created to comply with federal tax law, is an intangible on which a security lien may be created pursuant to Article 9 of the Uniform Commercial Code. We hold that it is, and, therefore, reverse the district court's judgment that a Keogh plan is a "bank deposit" excepted from Article 9.

## I.

Dr. John Nix borrowed $50,000 from First National Bank on September 17, 1982, executing an agreement to secure his debt with a $50,000 Keogh Self–Security Account, No. 586–25035. Apparently, the funds invested in the account had been used to purchase shares of Wilshire Oil Company stock.

In making its loan, First National Bank relied on an opinion letter from Nix's lawyer concluding that a lien on the Keogh account could be created under Texas law pursuant to Article 9 of the U.C.C. The bank advised the custodian of this account, Merrill Lynch, Pierce, Fenner & Smith, Inc., of the security agreement by letter. It also filed a financing statement describing the Keogh account with the Texas Secretary of State.

Nix later executed two new promissory notes in favor of the bank, one for $80,000, in return for which the bank released the 1982 promissory note, and the other for $25,000. Nix secured both of these notes by again granting the bank a lien on his Keogh account. There can be no doubt, therefore, that both Nix and the bank intended the assets in the account to serve as collateral for loans from the bank to Nix.

Later, Nix withdrew some of the assets from the account, reducing its balance to $30,797.87.

Nix defaulted on both bank notes, and he and his wife filed a Chapter 7 bankruptcy petition in 1987. At that time he owed the bank $124,724.88 in principal and interest. The bank asserts that it has a perfected lien on the Keogh account and requests that the automatic stay be lifted so that it can foreclose. The trustee in bankruptcy for Nix's estate, joined by Nix, opposes the bank's request on the grounds that the Keogh account is a bank account rather than an intangible asset, and that the transactions between the bank and Nix did not suffice to create a valid, perfected lien.

## II.

This case reaches us by an unusual route. After the Chapter 7 bankruptcy proceeding was assigned to the bankruptcy judge, the district court on its own motion withdrew it and seventeen other non-jury cases in an attempt to expedite the bankruptcy process and to reduce the backlog of cases pending in the bankruptcy court.[1] After the district court had withdrawn the case, the parties, at the judge's suggestion, consented in writing to trial and entry of judgment by a magistrate. This appeal is from the judgment entered by the magistrate. Because the submission of bankruptcy issues to a magistrate is uncommon, and because recent cases have limited magistrates' role in bankruptcy cases,[2] we requested counsel to submit supplemental briefs concerning the propriety of this procedure.

■ Routine reference to magistrates of bankruptcy matters, especially "core" proceedings [3] of the type before us, might disrupt Congress' statutory plan for the appointment of specialized bankruptcy judges to handle bankruptcy cases.[4] Even in bankruptcy cases, however, magistrates'

---

1. *See* 28 U.S.C. § 157(d).

2. *See, e.g., Minerex Erdoel, Inc. v. Sina, Inc.,* 838 F.2d 781 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988).

3. *See In re Wood,* 825 F.2d 90 (5th Cir.1987); 28 U.S.C. § 157(b)(2); 1 Collier on Bankruptcy § 3.01 (15th Ed.1988).

4. *See* 28 U.S.C. § 157; *see generally* 1 Collier on Bankruptcy § 3.01 (15th Ed.1988).

authority is determined by 28 U.S.C. § 636(c),[5] which authorizes a district court, with the consent of the parties, to refer any civil case to trial before a magistrate. No statute explicitly prohibits the reference of individual bankruptcy cases to a magistrate and § 636(c) authorizes reference of matters to a magistrate, "[n]otwithstanding any provision of law to the contrary." We therefore conclude that the reference was permissible. To preserve the integrity of the bankruptcy court system, however, district courts should refer core bankruptcy matters to magistrates only when, as in this case, there is a compelling need to do so.

### III.

A Keogh plan, also called an HR–10 plan, is designed to create a tax incentive for a self-employed person to provide retirement benefits for himself.[6] If a plan qualifies under the Internal Revenue Code, contributions to it are tax-sheltered. For a plan to be thus qualified, it must meet various requirements: for example, the amounts that can be contributed are limited, and withdrawals are subject to a 10% tax penalty.[7]

▮ Funds in a bankrupt's Keogh account are property of the bankruptcy estate, and ordinarily pass to the trustee.[8] Indeed, in *In re Witlin,*[9] this court held that a self-settled Keogh plan passes to the trustee even if it contains language prohibiting assignment or alienation of the benefits of a trust created pursuant to the plan; the restriction is void as against the settlor's creditors. The issue therefore is solely whether the assets in Nix's Keogh plan are subject to the lien asserted by the bank.

As enacted in Texas,[10] U.C.C. § 9.201 makes security agreements effective according to their terms if they comply with the provisions of Article 9. "General intangibles," which may be subject to security agreements,[11] are defined broadly in § 9.106 as, "*any* personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." (Emphasis added.) The official U.C.C. comment, issued at the time § 9.106 was adopted, states:

> The term "general intangibles" brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance.

The comment then refers to § 9.106 as a "catch-all definition."[12] This sweeping description by its literal terms encompasses the right of the person who establishes a Keogh plan to withdraw funds from the trust or account established to implement the plan.

The magistrate thought, however, that Dr. Nix's Keogh account was not subject to a lien under § 9.106 because § 9.104(12) excludes from the operation of Chapter 9 the "transfer of an interest in any deposit account." "Deposit account" is defined in § 9.105(a)(5) as:

> a demand, time, savings, passbook or *like account* maintained with a bank, savings and loan association, credit union or *like organization,* other than an account evidenced by a certificate of deposit.[13]

A Keogh-plan account is not, however, as the magistrate characterized it, "simply a savings account for self-employed persons in anticipation of retirement and with a

---

**5.** *See* 11 U.S.C. § 105.

**6.** *See* 26 U.S.C. § 401; B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 62.2 (1981 & Supp.1987) [hereinafter cited as Bittker, Federal Taxation].

**7.** *See* Bittker, Federal Taxation ¶ 62.2.

**8.** *In re Goff,* 706 F.2d 574, 588–89 (5th Cir.1983).

**9.** 640 F.2d 661 (5th Cir. Unit B 1981).

**10.** Tex.Bus. & Com.Code Ann. § 9.201 (Vernon Supp.1989).

**11.** *See id.* at § 9.103.

**12.** *Id.,* Uniform Commercial Code Comment on § 9.106.

**13.** *Id.* at § 9.105(a)(5) (emphasis added).

penalty for early withdrawal." As the separate treatment of certificates of deposit in § 9.105(a)(5) suggests, the phrase "savings account ... maintained with a bank ... or like organization" refers to accounts from which the depositor may withdraw funds at any time, subject only to such notice agreements as the bank may require. In contrast, a Keogh plan must be established in accordance with the provisions of the Internal Revenue Code,[14] and is subject to the penalty tax that discourages regular withdrawals. Whereas bank accounts are funded solely with cash, a Keogh plan may be, as Nix's was, funded in whole or in part with stock. Moreover, Merrill Lynch is not "a bank" or "like organization," [15] but a stock broker. It therefore could not accept deposits under Texas law.[16] It held Nix's Keogh plan assets as a fiduciary for him, not simply as a bank receiving a deposit. A Keogh plan therefore is not a "deposit account" within the meaning of § 9.105(a)(5), and may properly be the subject of a lien pursuant to U.C.C. Article 9.

For the foregoing reasons, the magistrate's determination that no valid lien could be placed on Nix's Keogh account is REVERSED. Although the magistrate also concluded that the bank had not properly perfected its lien, this conclusion depended crucially on the premise that a valid lien on a Keogh account could not be created. We therefore REMAND for further proceedings consistent with this opinion.

---

14. *See* 26 U.S.C. § 401; Bittker, Federal Taxation ¶ 62.2.

15. Tex.Bus. & Com.Code Ann. § 9.105(a)(5) (Vernon 1988).

16. *See* Tex.Rev.Civ.Stat.Ann. art. 342–902 (Vernon 1989).